IN THE UNITED STATES DISTRICT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CARLOS WHITE, § | |
| § | |
| Plaintiff, § | |
| v. § | CIVIL ACTION NO. 3:15-CV-527-M |
| § | |
| SOFTLAYER TECHNOLOGIES, INC., § | |
| ET AL. § | |
| § | |
| Defendants. § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion to Compel Arbitration and Dismiss Plaintiff's Claims, or, in the alternative, to Stay the Proceedings [Docket Entry #18] filed by International Business Machines Corporation ("IBM"), SoftLayer Holdings, Inc. ("SoftLayer Holdings"), and SoftLayer Technologies, Inc. ("SoftLayer") (collectively, the "IBM Defendants"). For the reasons explained below, the Motion to Compel Arbitration and Dismiss Plaintiff's Claims is **GRANTED**.

I.   BACKGROUND

Plaintiff Carlos White ("White") worked as SoftLayer's Assistant General Counsel from February 15, 2010 until September 7, 2012. On February 13, 2015, White filed this lawsuit against SoftLayer and other related entities, including SoftLayer Holdings and IBM,[1] alleging claims for race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981, arising from his

---

[1] SoftLayer Holdings owns one hundred percent of SoftLayer's stock, and IBM is SoftLayer's successor-in-interest. White also sued GI Partners L.P. and ThePlanet.com Services Inc. GI Partners, L.P. acquired SoftLayer in 2010 and then merged SoftLayer with ThePlanet.com Services, Inc. Pl. Orig. Comp. at 3, ¶6; Def. Ans. at 3, ¶ 6. In 2013, GI Partners, L.P. sold its controlling interest in SoftLayer and its affiliated companies, including SoftLayer Holdings, to IBM. *Id.* As a result of this transaction, IBM succeeded to all of SoftLayer's rights and liabilities, including any rights and liabilities under SoftLayer's employment agreement with White. *See* Def. App. at 6-7, ¶¶ 9-10.

1

employment with SoftLayer.  The IBM Defendants contend that, as a condition of being hired by SoftLayer, White agreed to submit all claims related to his employment to final, binding arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16.  Accordingly, the IBM Defendants move to compel White to arbitrate his claims in this lawsuit.

The IBM Defendants' motion is predicated upon an Employment, Confidentiality, Non-Solicitation, and Non-Competition Agreement (the "Employment Agreement" or "Agreement") dated February 15, 2010.  *See* Def. App. at 219-223.  Paragraph 9 of the Employment Agreement provides, in its entirety:

> Employee and SoftLayer agree that any differences, claims, disputes, or controversies between them arising out of this Agreement (including without limitation all claims or disputes arising out of or connected to Employee's employment or termination by SoftLayer) shall be submitted to, and determined exclusively by, binding arbitration pursuant to the Federal Arbitration Act.  This specifically includes any claim, including participation as a class representative or class member, Employee may have against SoftLayer that would otherwise require or allow resort to any court or other governmental dispute resolution forum arising from, related to, or having any relationship or connection whatsoever with Employee's employment or association with SoftLayer, whether based on tort, contract, statute, common law, or otherwise.  The sole exceptions to this mandatory arbitration provision are claims arising under the National Labor Relations Act, and claims for medical and disability benefits under workers' compensation or unemployment compensation claims filed with the State of Texas.  Nothing herein shall prevent Employee from filing and pursuing administrative proceedings only before the U.S. Equal Employment Opportunity Commission or an equivalent state agency (although if Employee chooses to pursue a claim following the exhaustion of such administrative remedies, that claim is subject to binding arbitration). EMPLOYEE AND SOFTLAYER UNDERSTAND THAT, BY AGREEING TO THIS BINDING ARBITRATION PROVISION, BOTH GIVE UP THEIR RIGHT TO TRIAL BY JURY OF ANY CLAIM EITHER MAY HAVE AGAINST THE OTHER EXCEPT AS EXPRESSLY PROVIDED HEREIN.  The parties shall mutually agree upon a qualified impartial arbitrator, who shall follow controlling law and issue a written opinion and Award, which shall be final, binding, and conclusive on the

>parties, and which may be entered and enforced by any court of competent jurisdiction.

*Id*. at 222, ¶ 9.  White opposes the motion to compel arbitration on three general grounds:  (1) the IBM Defendants have not shown that White agreed to arbitrate his claims; (2) Paragraph 9 of the Employment Agreement is illusory; and (3) Paragraph 9 is unconscionable.  The issues have been fully briefed, and the motion is ripe for determination.

## II.  LEGAL STANDARD

The Court's determination of whether White should be compelled to arbitrate his claims against the IBM Defendants pursuant to the FAA involves a two-step inquiry.  *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003).  First, the Court considers whether the parties agreed to arbitrate the dispute in question.  *Id.*  This inquiry examines (1) whether there is a valid agreement to arbitrate between the parties and (2) whether the dispute in question falls within the scope of that agreement.  *Id.*  If the Court finds that the parties agreed to arbitrate their dispute, it then considers whether any external legal constraints preclude arbitration of White's claims.  *Id.*  If there is a valid agreement to arbitrate, and there are no legal constraints that foreclose arbitration, the Court must order the parties to arbitrate their dispute.  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.") (emphasis in original) (citing 9 U.S.C. §§ 3–4).

The Court applies ordinary contract principles from the law of the state governing the agreement to determine whether the parties agreed to arbitrate.  *Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004).  Here, both parties acknowledge that Texas law applies.  The IBM Defendants, as the parties seeking to compel arbitration, need only prove the

existence of an agreement to arbitrate, by a preponderance of the evidence. *Grant v. Houser*, 469 F. App'x 310, 315 (5th Cir. 2012) (per curiam). White, as the party seeking to invalidate the agreement, bears the burden of establishing its invalidity. *Carter v. Countrywide Credit Indus.*, 362 F.3d 294, 297 (5th Cir. 2004).

### III. ANALYSIS

White first challenges whether the IBM Defendants have proved the existence of a valid arbitration agreement. He asserts that he "ha[s] no memory of reading or signing any arbitration agreement in connection with [his] employment at SoftLayer." Pl. Resp. App. at 4, ¶ 6. However, the Employment Agreement bears White's signature, s*ee* Def. App. at 223, and the IBM Defendants submitted evidence that White executed the Agreement on his first day of work at SoftLayer. *Id.* at 214, ¶ 8; *see also* Def. Reply App. at 5, ¶ 5. White challenges some of this evidence, including the statement in the declaration of Julia Fleitman that he signed the Employment Agreement, on the ground that the statement is not supported by personal knowledge because Fleitman was not present when he was signing documents on his first day of work. *See* Pl. Resp. App. at 14, ¶ 28. White does not challenge the declaration of Jessica Kracht that he signed the Employment Agreement. *See* Def. Reply App. at 5, ¶ 5. Kracht explains in her declaration that she was responsible for administering White's orientation on February 15, 2010, that she personally presented White with the Employment Agreement, and that he signed it. *Id.* Further, White does not directly or unequivocally deny that he signed the Employment Agreement. Rather, he concedes that the signature on the last page of the Agreement "looks like" his. Pl. Resp. App. at 4, ¶ 6 & 13, ¶ 25. In view of the record as a whole, White's assertion that he does not remember signing the Employment Agreement is insufficient to discredit the

4

evidence that he signed it, including the signed copy of the Agreement itself. *Celaya v. Am. Pinnacle Mgmt. Servs.*, *LLC*, 2013 WL 4603165, at *3 (N.D. Tex. Aug. 29, 2013).

White argues that, even if he signed the Employment Agreement, his signature does not establish that he agreed to be bound by the terms of Paragraph 9. He contends that he should not be bound by his signature because he was not provided adequate notice of the arbitration requirement or an opportunity to negotiate the provisions of Paragraph 9. These arguments are contrary to settled law. Under Texas law, "[a] party's signature on a written contract is 'strong evidence' that the party unconditionally assented to its terms." *In re December Nine Co.*, 225 S.W.3d 693, 699 (Tex. App.—El Paso 2006, orig. proceeding) (citations omitted). Unless White can show he was fraudulently induced to sign the Employment Agreement, he "is bound by the terms of the contract he signed, regardless of whether he read it or thought it had different terms." *In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005) (orig. proceeding) (per curiam) (citations omitted); *see also Smith v. H.E. Butt Grocery Co.*, 18 S.W.3d 910, 912 (Tex. App.—Beaumont 2000, pet. denied) (rejecting the argument that an employee can avoid an arbitration agreement merely because employer did not negotiate its terms).

White attempts to show that certain "troubling facts"—that he signed two different documents containing arbitration clauses; that Kracht wrote "NA" next to the phrase "Arbitration Agreement" on his "New Hire Orientation Checklist;" and that SoftLayer did not advise him to seek independent counsel if he had questions about his employment documents—constitute fraud. They do not. The existence of multiple contracts does not invalidate the agreement to arbitrate. *See In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 674 (Tex. 2006) (enforcing agreement to arbitrate where parties entered several separate agreements, including two arbitration agreements). Although White signed the Employment Agreement after having signed

5

another version of the Agreement containing a slightly different arbitration provision, the critical language in the earlier version provides that "any dispute . . . relating to Employee's employment by SoftLayer shall be resolved by binding arbitration." Pl. Resp. App. at 99.  This language is substantially similar to, and entirely consistent with, Paragraph 9 of the Employment Agreement. Kracht explained that she personally sent another version of the Employment Agreement to White in an email with other new hire paperwork, prior to his start date.  Def. Reply App. at 4-5, ¶ 4.  By February 15, 2010, SoftLayer had updated the Employment Agreement. *Id.* at 5, ¶ 5. When Kracht presented the Employment Agreement to White for execution, she told him that the updated version "officially replaced" the prior version. *Id.*  There is nothing misleading or fraudulent about there being two agreements.

Regarding the New Hire Orientation Checklist, White admits that he did not see the Checklist until he left SoftLayer in September 2012.  Pl. Resp. App. at 6-7, ¶¶ 11-12.  Therefore, he could not have relied on the Checklist to conclude that he was not subject to an arbitration agreement.  There also is no requirement that an employer advise its employees to seek legal counsel before signing an agreement.  SoftLayer's failure to recommend that White—a lawyer himself—seek legal advice before signing the Employment Agreement does not constitute fraud. *See Perez v. Lemarroy*, 592 F. Supp. 2d 924, 933 (S.D. Tex. 2008) (enforcing arbitration agreement even though defendant did not advise the plaintiffs that they could or should consult legal counsel before signing the agreement).  White has thus failed to demonstrate fraud, and he is bound by the terms of the Employment Agreement.  *In re McKinney*, 167 S.W.3d at 835.

Next, White argues that Paragraph 9 of the Employment Agreement is unenforceable because it is illusory.  Under Texas law, an "arbitration clause is not illusory unless one party can avoid its promise to arbitrate by amending the provision or terminating it altogether." *In re 24R,*

*Inc*. 324 S.W.3d 564, 567 (Tex. 2010). Paragraph 12 of the Employment Agreement states, in pertinent part:

> No waiver or modification of this Agreement or of any covenant, condition, or limitation in this Agreement shall be valid unless in writing and executed by the party to be charged. No evidence of any waiver or modification shall be offered or received in evidence in any proceeding . . . unless the waiver or modification is by written instrument, executed by the party to be charged.

Def. App. at 223, ¶ 10. This provision plainly prohibits SoftLayer from unilaterally modifying any provision of the Agreement, including Paragraph 9. White points to Paragraph 1 of the Agreement, which provides that "[e]ither party hereto may terminate this Agreement at anytime with or without cause," as support for his argument that the agreement to arbitrate is illusory because it would allow SoftLayer to amend Paragraph 9 and avoid its promise to arbitrate. *Id.* at 219, ¶ 1. Contrary to White's assertion, Paragraph 1 merely establishes the at-will nature of the parties' employment relationship. It does not permit SoftLayer to suddenly change the terms of Paragraph 9 to avoid arbitration. Therefore, the parties' agreement to arbitrate is not illusory.

White also argues that Paragraph 9 of the Employment Agreement is unconscionable. Texas law recognizes both substantive and procedural unconscionability. In the context of arbitration agreements, "[s]ubstantive unconscionability refers to the fairness of the arbitration provision itself, whereas procedural unconscionability refers to the circumstances surrounding adoption of the arbitration provision." *In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 677. White argues the arbitration agreement is substantively unconscionable because it does not provide "built-in protections" for the employee, such as requiring the employer to pay arbitration costs and the employee's attorneys' fees. The test for substantive unconscionability is "whether, 'given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the

7

circumstances existing when the parties made the contract.'" *Id.* at 678. Here, the arbitration agreement is silent as to costs and fees. Mere silence with respect to costs does not render an agreement unconscionable. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 756–57 (Tex. 2001). There is no indication here that the arbitration agreement would force White to incur prohibitive expenses, and the lack of other, unspecified "built-in protections" fails to demonstrate substantive unconscionability.

White contends that the agreement to arbitrate is procedurally unconscionable because SoftLayer was more knowledgeable and sophisticated than he was with respect to arbitration provisions in employment agreements. White contends that SoftLayer took advantage of his lack of knowledge and experience and used deception and trickery to "sneak" the arbitration agreement past him. These arguments are unavailing. Even if the Court assumed that White, a lawyer, was unsophisticated with respect to legal matters compared to SoftLayer, a mere imbalance in the parties' sophistication is not sufficient to render an agreement unconscionable. *Fleetwood Enterpr. Inc. v. Gaskamp*, 280 F.3d 1069, 1077 (5th Cir. 2002). The alleged "sharp practices" White identifies are generally the same "troubling facts" he relies on to argue that he is not bound by the Employment Agreement's arbitration provision. These circumstances, including not being provided with adequate notice of or an opportunity to review or negotiate the arbitration provision, fail to establish procedural unconscionability. *See In re Halliburton Co.*, 80 S.W.3d 566, 572 (Tex. 2002) (rejecting the argument that an arbitration provision between an employer and an employee is unconscionable merely because there was disparity in bargaining power between the parties or because the employer did not give the employee and opportunity to negotiate its terms). Texas courts have found an agreement procedurally unconscionable only in rare circumstances, such as when one of the parties was literally unable to understand the

8

agreement because of illiteracy or a language difference. *Fleetwood Enterpr.*, 280 F.3d at 1077. That is not the situation here. Accordingly, the Court finds that the IBM Defendants have established by a preponderance of the evidence the existence of a valid agreement to arbitrate between the parties.

White does not dispute that Paragraph 9, which provides that "any differences, claims, disputes, or controversies . . . arising out of this Agreement (including without limitation all claims or disputes arising out of or connected to Employee's employment or termination by SoftLayer) shall be submitted to, and determined exclusively by, binding arbitration pursuant to the Federal Arbitration Act," is broad enough to encompass his claims in this lawsuit. Nor does he contend that any law or policy precludes arbitration of these claims. Indeed, employment-related claims such as the ones at issue in this case are often held to be subject to mandatory arbitration agreements. *See, e.g., Rojas v. TK Commc'ns, In*c., 87 F.3d 745, 748 (5th Cir. 1996) (Title VII claims subject to mandatory arbitration provision); *Oubre v. Lundy Serv., Inc*., 1998 WL 907020, at *2 (N.D. Tex. Dec. 18, 1998) (same as to claims arising under Section 1981). The Court thus finds that White must be compelled to arbitrate his race discrimination and retaliation claims against the IBM Defendants.

Finally, a district court may dismiss, with prejudice, rather than stay, an action where all the issues are properly subject to arbitration. *Alford v. Dean Witter Reynolds, Inc*., 975 F.2d 1161, 1164 (5th Cir. 1992); *see also Adam Techs. Int'l S.A. de C.V. v. Sutherland Global Servs., Inc*., 729 F.3d 443, 447 n.1 (5th Cir. 2013) ("Although Section 3 of the Federal Arbitration Act directs district courts to stay pending arbitration, we are bound by our precedent which states that dismissal is appropriate 'when all of the issues raised in the district court must be submitted to arbitration.'" (quoting *Alford*, 975 F.2d at 1164)). All the claims asserted by White in this case

fall within the scope of the arbitration provision in the Employment Agreement. The only possible role the Court could have would be to review the arbitration award once the proceedings are concluded. *See Alford*, 975 F.2d at 1164. Under these circumstances, the case should be dismissed with prejudice rather than stayed. *Id.*; *Washington v. Sears Logistics Servs., Inc.*, 2014 WL 2159253, at *4 (N.D. Tex. May 23, 2014) (holding that "[w]hen a court determines that all claims are subject to arbitration, dismissal of the action with prejudice is appropriate and within the court's discretion.").

## IV.  CONCLUSION

For the reasons stated above, the IBM Defendants' Motion to Compel Arbitration [Docket Entry #18] is **GRANTED**, and White's claims are **DISMISSED** with prejudice. The parties are directed to arbitrate their dispute pursuant to the Employment Agreement.

**SO ORDERED.**

August 27, 2015.

BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS